IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00688-WDM-MEH

EDUARDO QUINTANA-CARDENAS,

     Applicant,

v.

JOSEPH ORTIZ, Executive Director, C.D.O.C., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

---

Miller, J.

     This matter is before me on a recommendation of Magistrate Judge Michael E.

Hegarty, issued April 4, 2006 (Docket No. 16), that Applicant Eduardo Quintana-

Cardenas's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

("Application") be denied.  Applicant filed a timely objection to the recommendation

(Docket No. 17) and is therefore entitled to *de novo* review of the portions of the

recommendation to which objection was made.  28 U.S.C. § 636(b); *Ocelot Oil Corp. v.*

*Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988).  As Applicant is proceeding *pro*

*se*, I must construe his pleadings liberally and hold him to a "less stringent standard."

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are

to be construed liberally and held to a less stringent standard than formal pleadings

drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))).  Having

reviewed the pertinent portions of the record in this case including the Application, the

answer, the traverse, the recommendation, Applicant's objections, and the state court appellate record, I find that the recommendation should be accepted for the following reasons.

Background

In November 2001 Applicant was convicted of possession of a Schedule II controlled substance, distribution of a Schedule II controlled substance, possession of over 1000 grams of a Schedule II controlled substance, and possession with intent to distribute more than1000 grams of a Schedule II controlled substance. His conviction stemmed from a traffic stop on October 21, 2000. On that date, Applicant was riding in the back seat of a truck driven by Robert Tafoya. Also present in the truck were Roseanne Tafoya, seated in the front passenger seat, and Dawn Gleiforst, seated in the back seat behind the driver. Allegedly, Officers Ryan and Duncan pulled the truck over because it was driving at 12:15 a.m. without its headlights on and the license plate was missing the year of registration sticker. Mr. Tafoya stopped the truck in the parking lot of a motel.

According to Applicant, as the officers were approaching the rear of the vehicle, Applicant rolled down his window and asked if he and Ms. Gleiforst could go into the motel and rent a room. According to Respondents, Applicant asked only if Ms. Gleiforst could leave the vehicle and rent a room.[1] In any case, one of the officers responded that "it will be just a minute, close the window please." (Application ¶ 7.) Applicant

_____

[1] The Colorado Court of Appeals ("CCA") noted only that Applicant asked if Ms. Gleiforst could leave the vehicle. (CCA Unpublished Opinion at 4, filed as Ex. D to Answer.)

obeyed and rolled up the window. The officers proceeded to ask Mr. Tafoya for his identification and, suspecting he had been drinking, asked him to exit the vehicle to perform a roadside test. Applicant alleges that at this point he again opened the window and asked if he and Ms. Gleiforst could leave and rent a hotel room but was again told to close the window. Respondents state that he opened the window a second time and was again instructed to shut it but do not state whether Applicant asked if he and/or Ms. Gleiforst could leave. After Mr. Tafoya failed the road-side test, the officers placed him under arrest. During the search of Mr. Tafoya's person incident to the arrest they found a small amount of methamphetamine in a blue bag in his pocket.

After Mr. Tafoya was given *Miranda* warnings, he consented to a search of the truck. The officers asked Ms. Tafoya to exit the vehicle and after she complied, asked Applicant to exit the vehicle. As Applicant stepped out of the truck, the officers noticed a small blue bag similar to the one they found on Mr. Tafoya on the floorboard of the vehicle where Applicant had been sitting. The officers proceeded to search Applicant "for weapons or narcotics"[2] and discovered a small amount of marijuana, $402 dollars, and two bus tickets. Applicant was arrested.

As Ms. Gleiforst exited the vehicle, Officer Ryan noticed a purse and book bag sitting on the seat between where Applicant and Ms. Gleiforst had been seated in the vehicle. After Ms. Gleiforst cleared a warrant check, she asked if she could leave and take her purse and book bag with her. When Officer Duncan held up the book bag and

_____

[2] Respondents maintain that the search of Applicant was performed after Applicant consented to such a search.

3

asked if it was hers, Ms. Gleiforst hesitated and then answered "no."  Officer Duncan

then asked if the book bag belonged to anyone else but no one claimed ownership of

the bag.  Officer Duncan proceeded to search the bag and found blue nail polish similar

to the type Ms. Gleiforst was wearing, some women's clothing, and three large blue

plastic bundles wrapped in black electrical tape containing methamphetamine.  A search

of Ms. Gleiforst's purse revealed a small amount of methamphetamine and a pipe.  The

officers also searched two bags in the vehicle that Applicant identified as his and

discovered black electrical tape similar to the type used on the methamphetamine

bundles, a tape measure, bus tickets with Applicant's name on them, and a butane

torch and fluid which are typical for preparing methamphetamine for ingestion.[3]

Applicant alleges that Officer Ryan admitted that he did not remember if Applicant had

consented to the search of his bags.  Respondents do not address this issue but state

that the officers searched the remainder of the truck, including Applicant's bags, to

inventory the contents.

        After a jury trial, Applicant was convicted and sentenced to a term of twenty

years and a term of four years, to be served concurrently.  Applicant appealed his

conviction to the Colorado Court of Appeals ("CCA"), which affirmed Applicant's

conviction on November 13, 2003.  The Colorado Supreme Court denied certiorari on

April 19, 2004.  Applicant has not sought any post-conviction relief.  His application for

habeas corpus relief appears to be timely as it was filed on April 15, 2005.

---

[3] There was some dispute as to the butane torch and fluid at trial as they did not
appear on the property list or in photos taken of the bag.  However, the trial court
admitted the evidence and such admission is not at issue now as the Application does
not assert that such admission violated his constitutional rights.

<u>Legal Standard</u>

As Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs my review. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before an application may be considered, however, the Applicant must have exhausted all available state remedies.[4] *Id.* § 2254(b). The grounds for granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529

---

[4] In this case, the parties agree that Applicant exhausted his state remedies.

U.S. 362, 405–06 (2000)).  A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [applicant's] case.'" *Lockyer v. Andrade*, 538 U.S. 63, 75 (2005) (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409–10, 412).  Indeed, a "'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams*, 529 U.S. at 411).  Finally, when analyzing an application, all determinations of factual issues by the State court are presumed to be correct and the applicant has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

<u>Discussion</u>

Applicant argues that his constitutional rights were violated in three ways at the trial: (1) he was illegally seized in violation of the Fourth Amendment when he was twice told to close the window during the traffic stop; (2) his Fourteenth Amendment rights were violated because there was insufficient evidence to demonstrate beyond a reasonable doubt that he knowingly possessed the methamphetamine, an element of the crimes for which he was convicted; and (3) the rejection of two of his tendered jury instructions concerning his defense theory and the use of a general verdict form violated his rights under the Sixth and Fourteenth Amendments.  Magistrate Judge Hegarty

6

determined that (1) because Applicant had had a full and fair opportunity to litigate the Fourth Amendment claim in state court, federal habeas corpus relief was not available for Applicant's Fourth Amendment claim and (2) the CCA's determination of Applicant's two other claims was neither contrary to, or an unreasonable application of, federal law nor was an unreasonable determination of the facts in light of the evidence presented. Therefore, Magistrate Judge Hegarty recommends that Applicant's claim be dismissed with prejudice. Applicant objects, essentially re-asserting the same arguments as he set forth in his Application.

1.    Fourth Amendment

Applicant claims that his conviction was based on evidence obtained as a result of an unconstitutional seizure of his person. He alleges that he was seized without probable cause in violation of the Fourth Amendment when, in response to Applicant's question whether he and Ms. Gleiforst[5] could leave the vehicle, the officers stated that the stop would only take a minute and instructed him to roll his window up. Respondents contend, however, that his Fourth Amendment claim is not one that a federal court may consider on habeas review.

The Fourth Amendment protects against unreasonable search and seizure and is

_____

[5] I note that there is a dispute as to whether Applicant asked if he and Ms. Gleiforst could leave the vehicle or if he asked only if Ms. Gleiforst could leave the vehicle. The CCA's analysis indicates only that Applicant asked if Ms. Gleiforst could leave the vehicle. (CCA Unpublished Opinion at 4, filed as Ex. D to Answer.) As the state court's factual determinations are given a presumption of correctness under the AEDPA, I must accept the CCA's version unless Applicant rebuts the presumption by clear and convincing evidence. I conclude that Applicant has not presented sufficient evidence to rebut such a presumption as he has presented nothing more than his own allegation that he asked if he could leave the truck with Ms. Gleiforst.

generally enforced through the exclusionary rule. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482–87 (1976); *United States v. Calandra*, 414 U.S. 338, 347 (1974). "The purpose of the exclusionary rule is not to redress the injury to the . . . victim. . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . ." *Calandra*, 414 U.S. at 347. Indeed, "[i]ts purpose is to deter—to compel respect for the constitutional guarantee in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 2174 (1960).

Although generally habeas review is available for constitutional violations, *see* 28 U.S.C. § 2254(a), due to the nature of a Fourth Amendment violation and remedy, that review is limited for alleged Fourth Amendment violations, *Stone*, 428 U.S. at 494. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. This limitation on federal habeas corpus review is based on the determination that the purposes behind the exclusionary rule do not require that it be applied during federal habeas review.[6] *Id.* Indeed, in the

---

[6] In support the Supreme Court noted that:
[T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific

federal habeas corpus context "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494. Although the Supreme Court has not articulated a precise meaning of the phrase "opportunity for full and fair litigation," the Tenth Circuit has determined that it "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend[ v. Sain*, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." *Id.*

In this case, Magistrate Judge Hegarty determined that Applicant had been provided with an opportunity for full and fair litigation of his Fourth Amendment claim and, therefore, federal habeas review was precluded. Applicant does not dispute that he had a procedural opportunity to raise his Fourth Amendment claim and was provided an evidentiary hearing to determine the merits of his claim. Applicant does, however, dispute whether the state court engaged in "colorable application" of the correct

---

disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant.

*Id.* at 493.

constitutional standard. Magistrate Judge Hegarty addressed this specific argument and determined that the CCA had reasonably applied the correct standard. I agree.

Consensual encounters are not protected by the Fourth Amendment because they are not "seizures" within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) ("Obviously, not all personal intercourse between policeman and citizens involves 'seizures' of persons."); *Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("The encounter will not trigger Fourth Amendment scrutiny unless it loses it consensual nature."). An encounter loses its consensual nature when, "taking into account all of the circumstances surrounding the encounter, the police conduct 'would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick*, 501 U.S. at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). I note that Applicant's articulation of the correct standard is whether "'in view of all the circumstances surrounding the incident, a reasonable person wold have believed that he was no longer free to leave.'" (Obj. at 3 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The two articulations are essentially the same except that *Bostick* accounts for circumstances where an outside factor prevents a person from leaving, such as when the person is a passenger on a bus. *Bostick*, 501 U.S. at 437. The essential issue in both is whether the liberty of the person has been restrained to the point of a Fourth Amendment violation. *See Bostick*, 501 U.S. at 434 (quoting *Terry*, 392 U.S. at 19 n.16); *Mendenhall*, 446 U.S. at 552.

Although relying on equivalent state law,[7] the CCA applied the correct federal constitutional standard, stating that "[a] person is 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave or to decline the officer's request or otherwise terminate the encounter." (CCA Unpublished Opinion at 2, filed as Ex. D to Answer.); *see Bostick*, 501 U.S. at 437 (quoting *Chesternut*, 486 U.S. at 569); *Mendenhall*, 446 U.S. at 554. After considering the circumstances surrounding the stop, the CCA determined that the encounter with Applicant was consensual and, therefore, denied Applicant's motion to suppress. Even though the CCA did not expressly state that a reasonable person would not have "believed that he or she was not free to leave" as Applicant argues it should have, given that the CCA specifically analyzed the circumstances surrounding Applicant's encounter with the police, I conclude that the CCA engaged in a "colorable application." Specifically, the CCA stated:

> The evidence showed the traffic stop to be routine and unexceptional. There was no evidence that the officers approached the vehicle in a threatening manner. The officers focused their attention on the driver, although they closely observed the passengers. When defendant opened the window and asked whether his girlfriend could go to the motel near where the stop occurred, the officer politely instructed him to close the window stating, "it will be just a minute, close the window please." The passengers were not asked to exit the vehicle until the driver had consented to a search of the vehicle. The officers dd not display their weapons and did not touch

---

[7] The CCA relied on the equivalent state law rather than citing to controlling Supreme Court precedent. The habeas statute, however, does not require citation to Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[I]ndeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* (emphasis in original). Therefore, the CCA's reliance on a state court decision is acceptable if the state court decision is in conformity with clearly established Supreme Court precedent. *See id.*

defendant prior to his arrest. Further, they did not order defendant to remain in the vehicle or retain his identification or travel documents prior to his arrest. *Cf. People v. Jackson*, *supra* (ordering a defendant to remain in the vehicle and retaining his identification resulted in a seizure).

Considering the totality of the circumstances, we agree with the trial court that the encounter was consensual. Thus, we conclude that the trial court correctly denied the motion to suppress.

(CCA Unpublished Opinion at 4, filed as Ex. D to Answer.)

Applicant's argument that (1) a mere comparison of the facts of his case to those of *Jackson* and (2) looking at factors that were not present rather than factors that were present is not "colorable application" is unpersuasive. Indeed, there is no precise wording or consideration that an appellate court must do to engage in a "colorable application." Rather, the appellate court must simply have not "wilfully refuse[d] to apply the correct and controlling constitutional standards." *Gamble*, 583 F.2d at 1165. I conclude that the CCA's express consideration of the factual circumstances of the case under the correct constitutional principle constitutes "colorable application" and, therefore, Applicant was provided with a full and fair opportunity to litigate his Fourth Amendment claim and federal habeas review is precluded.[8]

2.    Insufficient Evidence

Applicant also claims that he is entitled to habeas relief because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he knowingly possessed the methamphetamine, a required element of the crimes for which Applicant

_____

[8] I note that Applicant further argues that, because he is *pro se*, he need not find a Supreme Court case that would direct a different result than *Jackson*. However, although *pro se* litigants are afforded liberal construction of their pleadings, they still must demonstrate their claim has merit and the court is not to act as their advocate. *Hall*, 935 F.2d at 1110 ("[I]t is not the proper function of the district court to assume the role of advocate for the pro se litigant.").

was convicted. To determine a sufficiency of the evidence claim on habeas review, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006) (quoting *Jackson*, 443 U.S. at 319). "This standard reflects the 'longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial.'" *Hamilton*, 436 F.3d at 1194 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004)). Furthermore, a court's "review under this standard is sharply limited and a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (internal quotations omitted). The Tenth Circuit has not determined "whether a challenge to the sufficiency of the evidence on a habeas petition is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply." *Id.* Like the *Hamilton* court, however, I need not decide this issue because Applicant's claim for habeas relief fails under either standard. *See id.*

Applicant argues that the prosecution failed to prove beyond a reasonable doubt that he "actually knew of the presence of the controlled substance and exercised actual physical possession or immediate, knowing dominion or control over it." *See People v. Orozco*, 49 P.3d 1212, 1217 (Colo. Ct. App. 2002) (holding that a jury instruction incorporating this definition of possession was sufficient to instruct the jury on the

13

defendant's mere possession defense).  Magistrate Judge Hegarty determined that,

regardless of whether insufficiency of evidence is a legal question or a factual question,

Applicant failed to demonstrate that he was entitled to relief under the standards

articulated in 28 U.S.C. § 2254(d).  He concluded that the CCA applied the correct legal

standard and there was no evidence that the CCA's conclusion was contrary to, or an

unreasonable application of, that standard.  Finally, he determined that Applicant had

not presented evidence sufficient to demonstrate by clear and convincing evidence that

the state court's factual determinations were incorrect or unreasonable in light of all the

evidence presented at trial.

Applicant objects to Magistrate Judge Hegarty's recommendation stating that

Magistrate Judge Hegarty failed to address his argument that the jury impermissibly

determined his guilt based on "an inference that rested on an inference."[9]  *See*

*Anderson v. United States*, 417 U.S. 211, 224 (1974) (dealing with a conspiracy

charge); *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999) (quoting

*United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998))*; People v.*

*Ayala*, 770 P.2d 1265, 1267 (Colo. 1989) (cited by Applicant).  He maintains that the

---

[9]  Applicant also objects to Magistrate Judge Hegarty's recommendation with respect to his sufficiency of evidence claim and jury instruction claim on the ground that "the State did not argue exclusive possession."  This objection, however, is unclear and undeveloped.  Magistrate Judge Hegarty expressly noted that "[p]ossession need not be exclusive, provided that the defendant actually knew of the presence of the controlled substance and exercised actual physical possession or immediate, knowing dominion or control over it."  (Rec. at 15 (citing *Orozco*, 49 P.3d 1212).)  The CCA also utilized *Orozco's* definition of possession in its evaluation of Applicant's claims.  (*See* CCA Unpublished Opinion at 6, filed as Ex. D to Answer.)  Therefore, I do not see how the fact that the prosecution did not attempt to prove exclusive possession constitutes an objection to Magistrate Judge Hegarty's recommendation.  As such, I decline to address it further.

inference upon an inference is as follows: (1) an inference that the black tape found in his suitcase was the same as the black tape used to wrap the methamphetamine packages and (2) an inference that because Applicant possessed the black tape used to wrap the methamphetamine packages, he must have exercised dominion and control over the packages. Applicant argues that this was an inference upon an inference and, therefore, the prosecution did not prove possession beyond a reasonable doubt. I disagree.

First, I note that I am unconvinced that the CCA's use of the black tape as evidence of possession was an impermissible inference resting on an inference. Applicant is correct that presumptions and inferences may rest only on established facts. *Ayala*, 770 P.2d at 1268. However, in this case, the two inferences that Applicant complains about seem to be two parts of the same inference rather than an inference stacked upon an inference. It was established at trial that Applicant possessed tape "similar to" that which was used to tape the methamphetamine. To me, the inference that Applicant taped the methamphetamine packages thereby exercising control may be based solely on the fact that Applicant had similar tape to that which was used to tape the methamphetamine without an inference that the tape is chemically identical. As Applicant has set forth no argument to convince me otherwise, I conclude that the use of the black tape as a factor to prove possession is not an impermissible inference upon an inference.

Furthermore, although the presence of the black tape in his bag was one factor that the CCA looked to in its analysis, there were additional factors that the CCA relied on in determining that the evidence supported a conviction as a principal or

15

complicitor:[10]

> [Applicant] used methamphetamine with the driver the previous day. [Applicant] gave the driver the package of methamphetamine that was found on his person. A package of methamphetamine was found in the vehicle near [Applicant's] feet. The book bag that contained three large packages of methamphetamine was found between defendant and his girlfriend in the rear seat of the vehicle. No one in the vehicle claimed ownership of the book bag or its contents. Finally, all the methamphetamine seized by the police was packaged in similar blue plastic, and black tape found in [Applicant's] luggage was similar to the tape wrapped around the large packages of methamphetamine.

(CCA Unpublished Opinion at 6–7, filed as Ex. D to Answer.) As there was sufficient other evidence to support a finding that Applicant exercised dominion or control over the methamphetamine or acted as a complicitor to Ms. Gleiforst, I conclude that the CCA's determination that there was sufficient evidence to support Applicant's conviction beyond a reasonable doubt was not contrary to, or an unreasonable application of, clearly established federal constitutional law. *See* 28 U.S.C. § 2254(d)(1) (standard for questions of law). Indeed, the CCA neither applied a standard contrary to Supreme Court precedent, *see Price*, 538 U.S. at 640 (standard for "contrary to" clause), nor applied the correct standard in an objectively unreasonable manner, *see Lockyer*, 538 U.S. at 75 (standard for "unreasonable application" clause). Furthermore, I conclude that the CCA's determination was not based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d0(1) (standard for questions of fact). Applicant has not presented evidence

---

[10] Complicity is "a theory by which a defendant becomes accountable for a criminal offense committed by another." *People v. Thompson*, 655 P.2d 416, 418 (Colo. 1982). In Colorado, "[a] person is legally accountable as a principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." Colo. Rev. Stat. § 18-1-603 (2008).

sufficient to rebut the presumption of correctness afforded to state court factual determinations by clear and convincing evidence. Indeed, Applicant contests only one factor that the CCA relied upon in making its determination. Therefore, I conclude that federal habeas relief is not warranted for Applicant's claim based on the sufficiency of the evidence.

3.  Jury Instructions

Applicant moves for habeas relief based on the trial court's decision to not use two jury instructions proffered by Applicant. The first instruction that the trial court rejected read: "The guilt of a defendant cannot be established by mere presence at the scene of the crime with knowledge that a crime is being committed." The second rejected instruction was: "Where a person is not in exclusive possession of the vehicle it may not be inferred that he knew of the presence of the controlled substance and had control of it unless there are statements or other circumstances to buttress the inference."

"In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (citing *Lujan v. Tansy*, 2 F.3d 1031, 1035 (10th Cir. 1993)). "A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Id.* (citing *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990)). This burden in a habeas proceeding to show prejudice is "even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Thus, the question is "not merely whether 'the

instruction is undesirable, erroneous, or even universally condemned,'" but, rather "'whether the instruction so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)). Finally, the failure to give a proffered jury instruction "is less likely to be prejudicial than a misstatement of the law." *Id.*

The CCA determined that the content of Applicant's tendered instructions was encompassed in other jury instructions and, therefore, their omission did not deprive Applicant of his right to have the jury instructed on his defense theory. (*See* CCA Unpublished Opinion at 8, filed as Ex. D to Answer.) In evaluating this decision, Magistrate Judge Hegarty first noted that it was questionable whether Applicant exhausted his state court remedies with respect to a due process violation as Applicant did not articulate federal constitutional arguments in his state court appeal.[11] Nonetheless, Magistrate Judge Hegarty addressed the merits of Applicant's claim. He determined that Applicant was not entitled to habeas relief because the CCA's decision was not contrary to, or an unreasonable application of, controlling federal law. In fact, the CCA appropriately evaluated Applicant's proffered jury instructions by comparing them to the instructions that were given. *See Henderson*, 431 U.S. at 156. Magistrate Judge Hegarty concluded that Applicant failed to meet his burden of demonstrating that the trial court's rejection of his proffered jury instructions "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *See Maes*, 46 F.3d at 984.

_____

[11] I note that, notwithstanding Magistrate Judge Hegarty's concerns, the parties in this case appear to agree that Applicant did in fact exhaust his state court remedies for all of his habeas claims now before this Court.

Although slightly unclear in the context of jury instructions, Applicant objects arguing that Magistrate Judge Hegarty failed to consider his argument that his conviction was based on an inference resting upon an inference. As I have already determined, however, this argument is unpersuasive. Furthermore, I agree with the CCA that the content of Applicant's proffered jury instructions—that guilt requires more than mere presence at the scene of the crime and an inference of "possession" requires circumstances tending to support that conclusion—was encompassed in the jury instructions dealing with the definition of possession—"possession need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence of the object, or thing possessed, and exercised actual physical control or immediate, knowing dominion or control over it." (*See* CCA Unpublished Opinion at 8–9, filed as Ex. D to Answer.); *see also Orozco*, 49 P.3d at 217. Accordingly, habeas relief is not warranted for this claim as the CCA's resolution of the claim was not contrary to, or involved an unreasonable application of, controlling Supreme Court precedent nor was the decision based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d).

Finally, Applicant argues that the trial court's decision to use a general verdict form that did not require the jury to demonstrate the grounds on which it had determined Applicant's guilt makes it impossible to determine whether the jury made the necessary factual findings to support his conviction. Historically, "'in any criminal case a general verdict and judgment on an indictment or information containing several counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good

count only.'" *Griffen v. United States*, 502 U.S. 46, 49–50 (1991) (quoting *Claassen v. United States*, 142 U.S. 140, 146 (1891)). Nonetheless, the Supreme Court has determined that when one of the bases for guilt is itself unconstitutional or illegal, the verdict must be set aside. *Yates v. United States*, 354 U.S. 298, 312 (1957). However, when the alleged error is insufficiency of proof of one of the grounds for guilt, then there is no "basis for reversing an otherwise valid conviction." *Griffen*, 502 U.S. at 60. This distinction is based on the idea that although "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . [they] are well equipped to analyze the evidence." *Id.* at 59.

Magistrate Judge Hegarty determined that the CCA's conclusion that the use of a general verdict form was proper because the evidence supported a conviction as either a principal or a complicitor did not warrant habeas relief. Applicant objects arguing that Magistrate Judge Hegarty erroneously evaluated Applicant's claim as a factual claim rather than a legal claim. He claims that the general verdict form allowed the jury to base his conviction on a legally insufficient theory of law—an inference resting on an inference. First, as I have already determined, Applicant's argument regarding stacked inferences is unpersuasive. Second, I note that Magistrate Judge Hegarty did indeed conclude that Applicant was objecting to factual insufficiency rather than legal insufficiency. I agree with this construction of Applicant's argument. Applicant is not arguing that one of the grounds on which the jury could have found him guilty—either as a principal or a complicitor—is unconstitutional or legally insufficient; rather, he is arguing that the evidence was insufficient to support a conviction on one and/or both of those grounds. Although guilt may not be based on an inference resting upon an

inference, *see, e.g.*, *Anderson*, 417 U.S. at 224, any such error does not attack the constitutional sufficiency of one of the theories of guilt. Therefore, I agree with Magistrate Judge Hegarty that Applicant's argument is factual. The CCA determined that there was sufficient evidence to support Applicant's conviction as either a principal or a complicitor. (*See* CCA Unpublished Opinion at 6–7, filed as Ex. D to Answer.) And, as a general verdict form does not require reversal of a conviction when there is evidence supporting one of the theories of guilt, Applicant's final argument does not warrant habeas relief. *See Griffen*, 502 U.S. at 60.

Accordingly, it is ordered:

1.      The recommendation of Magistrate Judge Hegarty (Docket No. 16) issued April 4, 2006 is accepted.

2.      Applicant Eduardo Quintana-Cardenas's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 3) is denied.

3.      This case is dismissed with prejudice.


DATED at Denver, Colorado, on May 7, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge